UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA


Richard A. Larson Jr.,

Plaintiff,


v.


Taubell Corporation d/b/a Woodies Towing & Transport;

Steven Taubell, individually;

Timothy Lessard, individually;

Madia Law LLC,

Defendants.

RECEIVED

JAN 20 2026

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA


Civil Action No.: __26-cv-523-LMP/DLM__

---

# COMPLAINT

---

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and related claims under Minnesota law.
2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Minnesota and Defendants reside and/or conduct business in this District.

1

SCANNED

JAN 21 2026

U.S. DISTRICT COURT MPLS

## II. PARTIES

4.  Plaintiff Richard A. Larson Jr. is a resident of Minnesota and may be contacted via U.S. mail at:

    P.O. Box 580813

    Minneapolis, MN 55458

5.  Defendant Taubell Corporation d/b/a Woodies Towing & Transport is a Minnesota corporation operating a towing and transport business in Minneapolis, Minnesota.
6.  Defendant Steven Taubell is an owner and principal of Woodies Towing & Transport and acted individually and in concert with others during the events described herein.
7.  Defendant Timothy Lessard is a Minnesota resident who, at relevant times, acted individually and in coordination with others regarding Plaintiff.
8.  Defendant Madia Law LLC is a Minnesota law firm with its principal office in Minneapolis, Minnesota.

## III. FACTUAL ALLEGATIONS

9.  Plaintiff was hired by Woodies Towing & Transport in October 2024 as a tow-truck operator.
10. Shortly after being hired, Plaintiff was permitted to stay in a loft area at the Woodies shop, with express authorization and written acknowledgment from Defendant Steven Taubell. This arrangement was temporary and employment-related.
11. Plaintiff resided in the loft at the Woodies shop for a short period following his hire and moved out after New Year's, in January 2025, as the arrangement was not intended to be permanent.
12. After moving out of the Woodies loft, Plaintiff located a room-for-rent listing on Craigslist and entered into a housing arrangement with Defendant Timothy Lessard.
13. Plaintiff thereafter rented a room in a residence controlled by Defendant Lessard and treated the room as his private living space.
14. Plaintiff performed his job duties competently and was not subject to formal disciplinary action prior to the events described herein.
15. Plaintiff was supervised by Alicia Anderson and John Miller, who oversaw dispatch and field operations.
16. Plaintiff was permitted to retain company vehicles overnight and to stay at hotels when working extended hours, with supervisory approval.
17. During his employment, Plaintiff was issued and required to use a company-owned cellular phone for work-related communications.

2

18. On or about February 19, 2025, Plaintiff was abruptly removed from dispatch and instructed to return the tow truck to the shop.
19. Plaintiff was not provided advance notice, a written warning, or a termination letter despite requesting one.
20. During this incident, law-enforcement officers informed Plaintiff that Woodies management believed Plaintiff was "mentally ill" or "unsafe to drive," despite no citation, testing, or objective basis.
21. Defendant Steven Taubell later submitted statements to the Minnesota Unemployment Insurance office asserting that Plaintiff made statements involving conspiracies or microchips—statements Plaintiff expressly denies.
22. These statements were false, stigmatizing, unrelated to Plaintiff's job performance, and materially harmed Plaintiff's reputation and ability to obtain employment.
23. As a direct result of Defendants' actions, Plaintiff experienced housing instability and homelessness, along with severe financial and emotional distress.
24. On or about February 13, 2025, Defendant Timothy Lessard entered Plaintiff's rented living space without consent and without notice.
25. During that entry, Defendant Lessard accessed Plaintiff's personal and medical documents and subsequently provided Plaintiff's identifying information to law enforcement.
26. Plaintiff was arrested shortly thereafter on unrelated matters following this unauthorized disclosure.

## IV. RELEVANT FACTUAL BACKGROUND

27. On or about February 13, 2025, Plaintiff placed a personal audio recording device in a common-area laundry room within the residence and returned to his nearby bedroom.
28. While Plaintiff was in his bedroom, Andrew [Last Name Unknown], a former resident of the property prior to Plaintiff's occupancy, removed the recording device without Plaintiff's knowledge or consent and exited the residence with the device.
29. Upon realizing the device was missing, Plaintiff immediately followed Andrew outside and requested the return of his personal property. Andrew initially refused. Plaintiff warned that continued refusal would have consequences. Andrew then returned the device.
30. As Plaintiff re-entered the residence, Andrew told Plaintiff, "you're out of the house," and issued commands directing Plaintiff to go downstairs to his room, despite having no authority over Plaintiff's tenancy. Defendant Lessard was present inside the residence and awoke during this exchange.
31. As Plaintiff walked away, he verbally warned Andrew not to place his hands on him while Plaintiff was leaving, referencing statements Andrew had made earlier during a telephone call, portions of which Plaintiff preserved via audio recording.
32. Immediately thereafter, Defendant Lessard accused Plaintiff of making threats and of unrelated inappropriate conduct, allegations Plaintiff expressly denies, and contacted law enforcement.

3

33. When officers arrived, Plaintiff was seated in a company-issued tow truck he was authorized to operate and retain for work. Plaintiff informed officers no crime had occurred and attempted to leave.

34. Officers detained Plaintiff, obtained his identifying information from Defendant Lessard rather than from Plaintiff, and placed Plaintiff under arrest while Defendant Lessard knew Plaintiff had outstanding warrants.

35. Plaintiff pleads these facts as objective sequence demonstrating escalation, fabrication, and misuse of law-enforcement involvement.

## V. ISANTI COUNTY ARREST, BOOKING, AND DISCOVERY PRESERVATION

36. Plaintiff was arrested and booked into the Isanti County Jail.

37. Plaintiff alleges the arrest and booking were influenced by false or misleading information supplied by private individuals and adopted without independent verification.

38. During arrest, transport, and booking, Plaintiff experienced severe psychological distress and alleges custodial staff relied on third-party characterizations rather than objective observation or independent medical evaluation.

39. Plaintiff possesses contemporaneous audio recordings relevant to the information relied upon by law enforcement.

40. While in custody, Plaintiff alleges conditions exacerbated his distress, including isolation and lack of explanation.

41. These allegations are pled for record-preservation and discovery purposes.

## VI. EMPLOYMENT CONTROL AND JAIL-BASED LEVERAGE

42. On the morning following Plaintiff's arrest, Alicia Anderson, a supervisor or agent of Woodies, came to the jail to retrieve the tow-truck keys and company fuel card.

43. Ms. Anderson communicated that Plaintiff's employment status was uncertain and unresolved.

44. After communication with Steven Taubell, bail was paid and Plaintiff was released.

45. Plaintiff's employment remained in limbo, with no clear termination or reinstatement.

46. Upon returning to the residence, Plaintiff observed a written notice from Defendant Lessard stating he would enter Plaintiff's room within twenty-four hours for "maintenance."

47. Ms. Anderson later returned the tow-truck keys and instructed Plaintiff to continue operating the vehicle.

48. Plaintiff pleads these facts as demonstrating leverage exerted over employment, housing, and transportation.

4

49. When Plaintiff contacted Madia Law LLC, an employee or agent used derogatory language referencing mental illness and refused service.
50. Defendants' actions demonstrate retaliation, disability discrimination, invasion of privacy, and misuse of authority.

---

# VII. CLAIMS FOR RELIEF

## Count I – Retaliation

51. Plaintiff engaged in protected activity.
52. Defendants subjected Plaintiff to retaliatory destabilization and police involvement.

## Count II – Disability Discrimination (ADA & MHRA)

53. Defendants regarded Plaintiff as disabled.
54. Defendants took adverse actions based on that perception.

## Count III – Defamation

55. Defendants made false and stigmatizing statements.
56. The statements were published and caused harm.

## Count IV – Invasion of Privacy

57. Defendants entered Plaintiff's private living space without authorization and accessed personal documents.

## Count V – Intentional Infliction of Emotional Distress

58. Defendants engaged in extreme and outrageous conduct causing severe emotional distress.

---

5

## VIII. DAMAGES

59. Compensatory damages.
60. Punitive damages.
61. Costs and all other relief deemed just and proper.

## IX. TOLLING AND PRESERVATION

62. Equitable tolling applies.
63. Stigma-plus damages are preserved.

## X. JURY DEMAND

64. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Richard A. Larson Jr.

Plaintiff, Pro Se

P.O. Box 580813

Minneapolis, MN 55458